COPY

1  TODD BOLEY, Bar No. 68119
2  1212 Broadway, 16th Floor
   Oakland, California 94612
3  Telephone: (510) 836-4500; Fax: (510) 649-5170

4  EDWIN J. WILSON, JR.Bar., No. 48881
5  1212 Broadway, 16th Floor
   Oakland, California 94612
6  Telephone: (510) 836-4500; Fax: (510) 649-5170

7  Attorneys for Relator Danny R. Gilbert

8

9

10              UNITED STATES DISTRICT COURT

11            CENTRAL DISTRICT OF CALIFORNIA

12

13  UNITED STATES OF AMERICA, *ex rel.*    Case No. CV13-02978
    DANNY R. GILBERT;
14
             Plaintiff,
15
    v.                                     FALSE CLAIMS ACT COMPLAINT AND
16                                         DEMAND FOR JURY TRIAL
    INLAND COUNTIES REGIONAL
17  CENTER, INC. SOUTHWESTERN              FILED UNDER SEAL PURSUANT TO 31
    TRANSPORTATION MANAGEMENT              U.S.C. § 3730(b)(2)
18  SERVICES, LLC., REGIONAL CENTER
    SERVICES, LLC., WILLIAM AMES,          DO NOT PLACE IN PRESS BOX
19  JANET GOEHRING, CORINA DELEON,
    and DOES 1-10;                         DO NOT ENTER ON PACER
20
             Defendants.
21

22

23       PLAINTIFF and RELATOR DANNY R. GILBERT for his Complaint against

24  Defendants INLAND COUNTIES REGIONAL CENTER, INC. SOUTHWESTERN

25  TRANSPORTATION MANAGEMENT SERVICES, LLC., REGIONAL CENTER SERVICES,

26  LLC., WILLIAM AMES, JANET GOEHRING, and CORINA DELEON and each of them,

27  allege as follows: and each of them, allege as follows:

28

                              1
                    FALSE CLAIMS COMPLAINT

1  TODD BOLEY, Bar No. 68119
   1212 Broadway, 16th Floor
2  Oakland, California 94612
   Telephone: (510) 836-4500; Fax: (510) 649-5170
3

4  EDWIN J. WILSON, JR.Bar., No. 48881
   1212 Broadway, 16th Floor
5  Oakland, California 94612
   Telephone: (510) 836-4500; Fax: (510) 649-5170
6
   Attorneys for Relator Danny R. Gilbert
7

8

9
                    UNITED STATES DISTRICT COURT
10
                  CENTRAL DISTRICT OF CALIFORNIA
11

12

13  UNITED STATES OF AMERICA *ex rel.*        )    Case No.
    DANNY R. GILBERT;                         )
                                              )
14                                            )
              Plaintiff,                      )
15  v.                                        )    **FALSE CLAIMS ACT COMPLAINT AND
                                              )    DEMAND FOR JURY TRIAL**
16  INLAND COUNTIES REGIONAL                  )
    CENTER, INC. SOUTHWESTERN                 )    **FILED UNDER SEAL PURSUANT TO 31
17  TRANSPORTATION MANAGEMENT                 )    U.S.C. § 3730(b)(2)**
    SERVICES, LLC., REGIONAL CENTER           )
18  SERVICES, LLC., WILLIAM AMES,             )    **DO NOT PLACE IN PRESS BOX**
    JANET GOEHRING, CORINA DELEON,            )
19  and DOES 1-30;                            )    **DO NOT ENTER ON PACER**
                                              )
20            Defendants.                     )
                                              )
21

22

23       PLAINTIFF and RELATOR DANNY R. GILBERT for his Complaint against

24  Defendants INLAND COUNTIES REGIONAL CENTER, INC. SOUTHWESTERN

25  TRANSPORTATION MANAGEMENT SERVICES, LLC., REGIONAL CENTER SERVICES,

26  LLC., WILLIAM AMES, JANET GOEHRING, and CORINA DELEON and each of them,

27  allege as follows: and each of them, allege as follows:

28

                                    1
                         FALSE CLAIMS COMPLAINT

1

**INTRODUCTION**

2      1.     This is an action to recover damages and civil penalties on behalf of the United

3   States arising from false statements and claims made by the Inland Counties Regional Center

4   ("IRC"), Inland Counties Regional Center, Inc. Southwestern Transportation Management

5   Services, LLC., Regional Center Services, LLC., William Ames, Janet Goehring, and Corina

6   Deleon.

7      2.     IRC is a private, non-profit agency that has entered into a contract with the State

8   of California to act on behalf of the State in serving the needs of all persons with developmental

9   disabilities in the counties of San Bernardino and Riverside.  As part of its duties, IRC provides

10   comprehensive case management for each individual client or "consumer" with developmental

11   disabilities in its catchment area.  Based on an individualized determination, IRC identifies those

12   services each consumer needs and enters into contracts with qualified private vendors to provide

13   the services.  IRC then documents each expenditure on behalf of each consumer in a claim to the

14   California Department of Developmental Services ("DDS").

15      3.     DDS, an agency of the State of California, is a grantee of federal funds.  The

16   United States reimbursed the State of California for a significant portion of the funds paid as a

17   result of the false claims described in this complaint.

18      4.     After June 7, 2008, IRC submitted thousands of claims to DDS for "transportation

19   assessments" which were not required by consumers of IRC and which were not provided to

20   those consumers.  In approximately July, 2008, Southwestern received over $900,000 from IRC

21   resulting from these false claims.

22      5.     In early 2009, Plaintiff and Relator Gilbert discovered these improper and false

23   payments and disclosed them to numerous agencies including DDS.  He was terminated from

24   employment by IRC in retaliation for his protected conduct in June, 2009.

25      6.     The False Claims Act prohibits an employer from discharging an employee in

26   retaliation for disclosing a false claim to a government agency and authorizes an award of

27   damages to make the employee whole including reinstatement, two times the amount of back

28

1  pay, interest on the back pay, compensation for any special damage sustained as a result of the

2  discrimination, and punitive damages.

3  **PARTIES**

4      7.    Relator Danny Gilbert is a resident of the County of San Bernardino. From

5  November 1994 until May 2009, Mr. Gilbert was employed as a Consumer Services Coordinator

6  for IRC.

7      8.    Defendant IRC is a corporation with its headquarters in San Bernardino County,

8  California. IRC has entered into a contract with DDS to provide comprehensive services to

9  persons with developmental disabilities pursuant to Welf. & Inst. Code §§ 4620, et. seq.

10      9.    IRC contracts with DDS to provide services to persons with developmental

11  disabilities on behalf of the State of California. The United States reimburses the State of

12  California for funds paid by DDS to IRC. These include payments made pursuant to the

13  Medicaid Program and the Home and Community-Based Services Waiver authorized by Section

14  1915(c) of the Social Security Act ("HCBS Waiver").

15      10.    Defendant Southwestern is a Limited Liability Partnership with its principal place

16  of business in Riverside County, California. It has entered into a contract with IRC to provide

17  transportation related services for persons with developmental disabilities.

18      11.    Defendant WILLIAM AMES ("Ames") is the president of Southwestern.

19      12.    Defendant Regional Center Services, LLC., is the alter ego of Southwestern.

20  Regional Center Services was formed by Ames in 2011. It operates from the same address as

21  Southwestern did, has the same employees as Southwestern and carries out the same services for

22  IRC that Southwestern performed. Regional Center Services was formed for the purpose of

23  evading liability for the fraudulent and illegal actions of Southwestern and to permit Ames to

24  continue receive funding from IRC and DDS.

25      13.    At all times relevant to this complaint, defendant CORINA DELEON ("DeLeon")

26  was the Chief of Community Services and a member of the control group for IRC.

27      14.    At all times relevant to this complaint JANET GOEHRING ("Goehring") was the

28  Chief of Administrative Services and a member of the control group for IRC.

15.     Does 1 through 30, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to plaintiff and/or the relator. When their true names and capacities are ascertained, plaintiff and/or the relator will amend this complaint by asserting their true names and capacities herein. Plaintiff and/or the relator are informed and believe and on that basis allege that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that the damages as herein alleged were proximately caused by those defendants.

16.     Plaintiff and/or the relator are informed and believe and on that basis allege that at all times herein mentioned each of the defendants herein mentioned, including Does 1 through 30, were agents, servants, and employees of their co-defendants, and in doing the things hereinafter alleged were acting in the scope of their authority as such agents, servants and employees and with the permission and consent of their co-defendants.

17.     Defendants IRC, SOUTHWESTERN, AMES, GOEHRING, and DELEON knowingly and willingly conspired and agreed among themselves to engage in the wrongful conduct described below. Defendants did the acts and things herein alleged pursuant to, and in furtherance of, the conspiracy and above alleged agreement. Each defendant furthered the conspiracy by cooperation with, encouragement to, ratification and adoption of the acts of each other defendant.

## JURISDICTION AND VENUE

18.     This action arises under the False Claims Act, 31 U.S.C. §§ 3729 et seq. This Court has jurisdiction over this case pursuant to 31 U.S.C. §§ 3732(a) and 3730(b). This court also has jurisdiction pursuant to 28 U.S.C. § 1345 and 28 U.S.C. § 1331.

19.     Venue is proper in this District pursuant to 31 U.S.C. § 3732(a), because the acts proscribed by 31 U.S.C. §§ 3729 et seq. and complained of herein took place in this district, and is also proper pursuant to 28 U.S.C. § 1391(b) and (c), because at all times material and relevant, defendants transact and transacted business in this District.

///

///

1

## FACTUAL ALLEGATIONS

2  **A.   Allegations Common to All Causes of Action.**

3      20.    The Lanterman Developmental Disabilities Services Act (Welf. & Inst. Code §§

4  4500 *et. seq.*, "The Lanterman Act")[1] is the statutory framework for the system of services for

5  persons with developmental disabilities in California.

6      21.    The Department of Developmental Services ("DDS") is the state agency with

7  jurisdiction over the execution of the laws relating to the care, custody and treatment of

8  developmentally disabled persons. (§4416) The Lanterman Act mandates that DDS contract

9  with private organizations known as regional centers to locate persons with developmental

10  disabilities, assess their needs and select private vendors to meet those needs. (§§4620, 4641-

11  4647) DDS has entered into contracts with 21 independent regional centers each of which serve

12  a specific geographical area known as a catchment area.

13      22.    The IRC and DDS have entered into to a contract that requires IRC to provide all

14  services statutorily required of a regional center for the counties of Riverside and San

15  Bernardino. By law, the contract between IRC and DDS must contain a provision requiring IRC

16  to render services in accordance with state law. (§4629) The contract between DDS and

17  regional centers require strict accountability and reporting of all revenues and expenditures.

18  (§4631(b))

19      23.    The Lanterman Act requires that each client of a regional center, described as a

20  "consumer," be assigned a service coordinator who helps to develop a plan for services and

21  assists the consumer and his or her family in obtaining the services.

22      24.    The regional centers, and not DDS, are responsible for determining the services to

23  be rendered to consumers and arrange for their delivery. (§§4620, 2630, 4648, 4651)

24      25.    The first step in defining the services to be provided a consumer is the preparation

25  of an Individual Program Plan ("IPP"). The IPP is prepared by the service coordinator, the

26  consumer, the parents of a minor child, a guardian or conservator (if any), and anyone else the

27  ————————————————

28      [1]  Unless otherwise indicated, all statutory references are to the Welfare and Institutions
Code.

consumer invites to participate. The IPP includes an assessment of the consumer's capabilities and problems; a statement of time-limited objectives for improving his or her situation; and a schedule of the type and amount of services necessary to achieve the objectives. (§§4646, 4646.5)

26.     The regional centers are responsible for securing the services and supports identified in each consumer's IPP. Regional centers may obtain services from an individual or agency "which the regional center and consumer or, where appropriate, his or her parents, legal guardian, or conservator, or authorized representatives, determines will best accomplish all or any part of that consumer's program plan." (§4648(a)(3))

27.     In order to qualify as a provider of services to regional center consumers, the individual or agency must first undergo a process known as "vendorization" which "is the process for identification, selection, and utilization of service providers or contractors, based on the qualifications and other requirements necessary in order to provide the service." (§4648(a)(3)(A))

28.     State regulations prohibit regional centers from referring consumers to a provider or reimbursing a provider for services prior to the completion of the vendorization process. (17 CCR 54326(d)(4)) The only exception to this prohibition is when "the health or safety of a consumer is in jeopardy and no current vendor is available to provide the needed service." (17 CCR 54324)

29.     Each year, the legislature allocates an amount to fund the purchase of services on behalf of all regional center consumers in the state. Under a formula agreed to by the Association of Regional Center Agencies, each regional center is allocated a sum for purchasing services from private vendors for its consumers.

30.     DDS maintains a Uniform Fiscal System (UFS) on a network of computers shared by DDS and the regional centers. The UFS includes an authorization file for each consumer which includes codes to identify the consumer, each service to be provided to the consumer, and each vendor who provides the service. Regional centers utilize the UFS to report all bills paid on behalf of the consumer. DDS then reimburses the regional centers for services purchased based

1    on claims reports submitted through the UFS. The claims reports include client and service

2    provider identification, date of service, the cost and service codes.

3          31.    DDS utilizes the UFS to determine whether sums expended by regional centers

4    for purchase of services exceed the funds allocated by DDS.

5    **B.    The False Payments to Southwestern**

6          32.    Under state regulations, regional centers can purchase transportation services only

7    when such a service is included in the consumer's IPP. (17CCR 58510(a)(1))

8          33.    Transportation services paid by DDS to IRC consumers are reimbursable under

9    the Medicaid Program and through the Home and Community-Based Services Waiver.

10         34.    In early 2008, IRC, DeLeon and Goehring developed a scheme to enter into a

11   contract with Southwestern. The purpose of the scheme was to funnel over $900,000 to

12   Southwestern before the end of the 2007/2008 fiscal year in July, 2008. IRC, DeLeon and

13   Goehring believed that the payments to Southwestern would increase IRC's Purchase of Service

14   funding in the next fiscal year. The plan was intended to bypass a freeze on rates for

15   transportation vendors.

16         35.    Ames and Southwestern participated in the plan by providing the paper work

17   necessary to create a vendor entity that would receive the payments. On April 1, 2008, William

18   Ames, on behalf of Southwestern signed a Home and Community Based Services Provider

19   Agreement in which he certified that all services billed for by Southwestern were provided in

20   accordance with the consumer's IPP. This certification permitted federal funds to be paid on

21   account of the claims submitted by IRC on behalf of Southwestern.

22         36.    In June, 2008, IRC, DeLeon and Goehring submitted or directed others to submit

23   over 3000 identical claims through the UFS to DDS for "transportation assessments." The

24   claims falsely stated that each consumer received an assessment and that Southwestern was

25   billing $314.01 for each "assessment."

26         37.    The claims represented that the assessments were completed on various dates, but

27   no later than June 30, 2008, the last day of the 2007-2008 fiscal year.

28

FALSE CLAIMS COMPLAINT

1    38.    In approximately December 2008 or January 2009, Consumer Service

2  Coordinators at IRC learned from a review of monthly billing data that Southwestern had billed

3  IRC for "transportation assessments" for over 3000 consumers on their caseloads.

4    39.    Neither the Consumer Service Coordinators, consumers nor the consumers'

5  families requested any transportation assessments for any of the consumers who received them.

6  The consumers did not require transportation assessments and none of the consumers' IPPs

7  identified transportation assessments from Southwestern as a need of the consumer. Consumer

8  Services Coordinators never received any transportation assessments from Southwestern.

9    40.    In violation of state regulations, Southwestern was paid for services it allegedly

10  performed when it was not a qualified vendor of services. In fact, Southwestern did not even

11  apply for vendorization until after it allegedly performed the assessments.

12    41.    On July 30, 2008 IRC issued a check for $417,691.27 for the assessments.

13  Because the services were purportedly performed prior to June 30, 2008, the check was paid out

14  of the fiscal year 2007-2008 purchase of service allocation. In total, Southwestern received over

15  $900,000 for "transportation assessments" allegedly performed before July 1, 2008.

16    42.    In a memorandum to staff, the Director of the IRC, Mary Lynn Clark,

17  acknowledged that Southwestern's "transportation assessments" had utilized funds that would

18  have otherwise been surplus at the end of the fiscal year. By spending the surplus funds, IRC

19  avoided returning the money to DDS for redistribution to other regional centers.

20  **C.    Wrongful Termination of Relator**

21    43.    Beginning in January, 2009, Plaintiff and Relator Gilbert contacted Protection and

22  Advocacy, DDS, the U.S. Office of the Inspector General, and the California Department of

23  Justice. In oral and written communications, Plaintiff and Relator Gilbert stated that IRC had

24  paid thousands of dollars to Southwestern for transportation assessments never performed

25    44.    When IRC learned of Plaintiff and Relator's contact with governmental agencies,

26  they began a campaign of harassment of Mr. Gilbert designed to discourage him and others from

27  exposing the false and fraudulent payments by IRC and other misconduct by IRC.

28  / / /

1    45.    On May 28, 2009, IRC terminated Plaintiff and Relator Gilbert from employment

2 in retaliation for his reporting of the improper payments to Southwestern, DSSF and CHF.

3    46.    Plaintiff commenced an action on June 3, 2010, under the California False Claims

4 Act. He amended his complaint on March 14, 2011 to allege a cause of action for employment

5 termination and harassment in violation of Gov't Code 12653. That action is still pending in the

6 Superior Court of San Bernardino County.

7    47.    The statute of limitations for plaintiff's retaliation claim is tolled during the

8 pendency of the state court action in that defendants received timely notice; there is no prejudice

9 to the defendants and the plaintiff has acted reasonably and in good faith. *McDonald v. Antelope*

10 *Valley Community College Dist.*, 45 Cal.4th 88, 102 (2008)

11    **FIRST CAUSE OF ACTION: FALSE CLAIM (31 U.S.C. § 3729(a)(1)(A)**

12    48.    Plaintiff and Relator Gilbert re-alleges and incorporates herein paragraphs 1

13 through 48 above.

14    49.    Defendants knowingly made or caused to be made false claims for payment or

15 approval to a grantee or recipient of federal funds.

16    50.    The United States reimbursed the State of California for a portion of the funds

17 paid as a result of the false claims.

18    51.    The funds were expended on behalf of the United States and to advance a program

19 or interest of the United States.

20    52.    The amount in controversy exceeds $500.00.

21    **SECOND CAUSE OF ACTION: FALSE RECORD (31 U.S.C. § 3729(a)(1)(B)**

22    53.    Plaintiff and Relator Gilbert re-alleges and incorporates herein paragraphs 1

23 through 53 above.

24    54.    Defendants knowingly made or caused to be made false records or statements to

25 get a false claims paid or approved by a grantee or recipient of federal funds.

26    55.    The United States reimbursed the State of California for a portion of the funds

27 paid as a result of the false claims.

28 / / /

FALSE CLAIMS COMPLAINT

56.     The funds were expended on behalf of the United States and to advance a program or interest of the United States.

57.     The amount in controversy exceeds $500.00.

## THIRD CAUSE OF ACTION: CONSPIRACY TO SUBMIT
## FALSE CLAIMS (31 U.S.C. § 3729(a)(1)(C)

58.     Plaintiff and Relator Gilbert re-alleges and incorporates herein paragraphs 1 through 58 above.

59.     Defendants combined, conspired, and agreed together to defraud the United States by knowingly submitting false claims to the United States and to its grantees for the purpose of getting the false or fraudulent claims paid or allowed and committed the other overt acts set forth above in furtherance of that conspiracy, all in violation of 31 U.S.C. § 3729(a)(1)(C), causing damage to the United States.

## FOURTH CAUSE OF ACTION: AVOIDANCE OF OBLIGATION
## TO REPAY UNITED STATES (31 U.S.C. § 3729(a)(1)(G)

60.     Plaintiff and Relator Gilbert re-alleges and incorporates herein paragraphs 1 through 60 above.

61.     Defendants knowingly and improperly avoided an obligation to repay moneys received as a result of the schemes described above..

## FIFTH CAUSE OF ACTION: WRONGFUL TERMINATION
## IN VIOLATION OF THE FALSE CLAIMS ACT (Defendant IRC)

62.     Plaintiff and Relator Gilbert re-alleges and incorporates herein paragraphs 1 through 62 above.

63.     Defendant IRC harassed, discharged, discriminated against Plaintiff and Relator Gilbert because of lawful acts done by him in disclosing information to government and law enforcement agencies regarding false claims. This harassment and termination was in violation of 31 U.S.C. § 3730(h).

/ / /

/ / /

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs pray judgment against defendants and each of them as follows:

1.     That defendants cease and desist from violating the False Claims Act;

2.     That the Court enter judgment against defendants in an amount equal to three times the amount of damages the United States has sustained as a result of defendants' actions;

3.     That the Court award a civil penalty against each defendant of $11,000.00 for each violation of the False Claims Act;

4.     That relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

5.     That relator be awarded all costs and expenses of this action, including attorneys' fees;

6.     That relator be reinstated in his position with IRC with the same seniority status that he would have had but for the wrongful harassment, discrimination and termination;

7.     That relator be awarded all relief necessary to make him whole, including but not limited to two times the amount of back pay, interest on the back pay, compensation for any special damage sustained as a result of the wrongful actions of defendants;

8.     That the United States and relator recover such other and further relief as the court deems necessary.

Dated: April 26, 2013

By _____

Todd Boley

Attorney for Relator Danny R. Gilbert

11

FALSE CLAIMS COMPLAINT